Rosa **CHAVEZ,** aka Rosa Martinez, Plaintiff,

v.

Michael J. **ASTRUE,** Commissioner of Social Security, Defendant.

No. EDCV 08–1431–RC.

United States District Court, C.D. California.

Dec. 21, 2009.

Bill Latour, Bill Latour Law Offices, Loma Linda, CA, for Plaintiff.

Ann L. Maley, SAUSA–US Attorney's Office, US Department of Justice, Assistant U.S. Attorney LA–SSA, Office of the General Counsel for Social Security Adm., San Francisco, CA, Assistant U.S. Attorney LA–CV, AUSA–Office of U.S. Attorney, Los Angeles, CA, for Defendant.

## OPINION AND ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

Plaintiff Rosa Chavez, aka Rosa Martinez, filed a complaint on October 21, 2008, seeking review of the Commissioner's decision denying her application for disability benefits. On March 24, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on May 6, 2009.

## BACKGROUND

### I

This case has a lengthy history, as the ALJ set forth:

This matter originally stems from the claimant's April 8, 1993 applications for a period of disability, disability insurance benefits, and supplemental security income. The [plaintiff] was found disabled effective September 1992 due to polysubstance abuse. The [plaintiff's] benefits were ceased effective January 1, 1997, when Public Law 104–121 was effectuated, and benefits were no longer paid to claimants who had a drug or alcohol disorder that was a contributing factor material to a finding of disability. The [plaintiff] filed a request for a hearing; however, the request for hearing was dismissed on May 16, 1997, when the [plaintiff] failed to appear for the scheduled hearing. The Appeals Council remanded the case; and on April 28, 1998, the [plaintiff's] request for hearing was dismissed again based on abandonment after she failed to reply or to provide the names of treating sources as requested. On May 13, 1999, the Appeals Council remanded the matter because the [plaintiff] advised she had moved to Chicago and had provided information about the change of address to the administration. A hearing was subsequently held before an administrative law judge in Chicago, Illinois; and on January 28, 2000, the judge issued an unfavorable decision. The [plaintiff] was found to have "severe" impairments consisting of osteoarthritis and allied disorders and an affective disorder, which did not meet or equal any listed impairment, and which did not preclude light exertion with limitations to simple work tasks. [¶] The [plaintiff] appealed the January 28, 2000 unfavorable decision, and on March 14, 2000, the [plaintiff] filed her second application for a period of disability and disability benefits. On May 3, 2000, the [plaintiff] filed an application for supplemental security income. The [plaintiff's] subsequent applications were denied at the hearing level by Administrative Law Judge Jacqueline Drucker on May 22, 2003.

\* \* \*

The [plaintiff] appealed the second unfavorable decision, and on June 10, 2004, the Appeals Council remanded the Janu-

ary 28, 2000 and May 22, 2003 unfavorable decisions with ... instructions.... [¶] While the above matters were pending, the [plaintiff] filed new Title II and Title XVI applications on November 13, 2003. Those applications were consolidated with the prior applications when the Appeals Council remanded the aforementioned decisions. [¶] After due notice, a hearing was held before [Administrative Law Judge Jay E. Levine ("ALJ")] on October 7, 2004 in San Bernardino, California.... [¶] On December 21, 2004, [the ALJ] issued an unfavorable decision.... [¶] Once again, the [plaintiff] appealed the unfavorable decision, and once again, the Appeals Council remanded the December 21, 2004 decision ... with ... instructions....

Certified Administrative Record ("A.R.") 20–21.

On April 11, 2007, the ALJ conducted another administrative hearing, A.R. 1534–69, and on June 19, 2007, he issued a decision again finding plaintiff is not disabled. A.R. 17–39. The plaintiff requested review from the Appeals Council, and on September 5, 2008, the Appeals Council denied review. A.R. 13–16.

## II

The plaintiff, who was born on March 26, 1953, is currently 56 years old. A.R. 83. She has a general equivalency degree and a secretarial science certificate, and has previously worked as a receptionist, a sales clerk, an advocate, a data entry clerk, a night counselor, and a motel clerk. A.R. 120–25, 130, 1566.

## DISCUSSION

## III

■ The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir.2009); *Vernoff v. Astrue,* 568 F.3d 1102, 1105 (9th Cir.2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998); *Holohan v. Massanari,* 246 F.3d 1195, 1201 (9th Cir.2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." *Parra v. Astrue,* 481 F.3d 742, 746 (9th Cir.2007), 552 U.S. 1141, 128 S.Ct. 1068, 169 L.Ed.2d 808 (2008); *Vasquez,* 572 F.3d at 591.

■ The claimant is "disabled" for the purpose of receiving benefits under the Social Security Act ("Act") if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996); *see also Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 689 (9th Cir.2009) ("To establish eligibility for Social Security benefits, a claimant has the burden to prove he is disabled.").

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in

a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1] *Maier v. Comm'r of the Soc. Sec. Admin.,* 154 F.3d 913, 914–15 (9th Cir.1998) (per curiam).

However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir.2001); *Parra,* 481 F.3d at 746. Rather, the Act provides that "[a]n individual shall not be considered disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

For claimants such as plaintiff, who have substance abuse dependency, the ALJ "must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935." *Bustamante,* 262 F.3d at 955 (citations omitted); *see also Brueggemann v. Barnhart,* 348 F.3d 689, 694 (8th Cir.2003) ("The plain text of the relevant regulation requires the ALJ first to determine whether [the claimant] is disabled ... without segregating out any effects that might be due to substance use disorders...." (citations and footnote omitted)); *Drapeau v. Massanari,* 255

---

1. First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3) ]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

F.3d 1211, 1214 (10th Cir.2001) ("The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C). The [ALJ] must first make a determination that the claimant is disabled." (citation omitted)). Then the ALJ "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." [2] 20 C.F.R. §§ 404.1535(a), 416.935(a); *see also Brueggemann*, 348 F.3d at 694–95 ("If the gross total of a claimant's limitations, including the effect of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent."); *Drapeau*, 255 F.3d at 1214 ("[The ALJ] must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol [or drugs].").

Applying the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff has the severe impairments of hypertension, hepatitis C, a dysthymic disorder and recurrent polysubstance abuse (heroin) disorder (Step Two); however, plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (Step Three). Next, the ALJ determined plaintiff can perform her past relevant work as a data entry clerk.[3] (Step Four). Finally, the ALJ concluded plaintiff could perform a significant number of jobs in the national economy; therefore, she is not disabled. (Step Five).

## IV

■ The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir.2005). Including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir.1994).

■ A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. *Webb*, 433 F.3d at 686; *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir.2001); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental

---

**2.** "The 'key factor ... in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability' is whether an individual would still be found disabled if [he] stopped using alcohol or drugs." *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir.1998) (citation omitted); 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

**3.** In an apparent typographical error, the ALJ found, at Step Four, that plaintiff "is unable to perform any past relevant work" (Finding no. 6); however, he then stated he "accept[s] and adopt[s] the testimony of the vocational expert," who testified plaintiff can "perform her past relevant work as a data entry clerk." A.R. 37. The ALJ also found at Step Five that plaintiff can perform other work in the national economy. Thus, this typographical error does not affect the Court's analysis.

ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); *Webb*, 433 F.3d at 686. If the claimant meets her burden of demonstrating she suffers from an impairment affecting her ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir.2001) (emphasis in original); *Webb*, 433 F.3d at 686.

■ On March 1, 2004, Rocely Ella–Tamayo, M.D., examined plaintiff and diagnosed her with hypertension, past heroin abuse with a history of hepatitis C, chronic nicotine abuse, a history of chronic pain syndrome, and obesity.[4] A.R. 1295–1300. Dr. Ella–Tamayo opined:

> [plaintiff] is restricted in pushing, pulling, lifting, and carrying to about 50 pounds occasionally, and about 25 pounds frequently. Sitting is unrestricted. In terms of standing and walking, the [plaintiff] is able to stand and walk 6 hours out of an 8–hour workday with normal breaks. *She is able to kneel and squat only occasionally because of her obesity.* There is no functional impairment observed in both hands.

A.R. 1300 (emphasis added).

Based solely on Dr. Ella–Tamayo's opinion, plaintiff contends the ALJ erred in not finding obesity to be a severe condition. Jt. Stip. at 10:22–14:4, 15:18–23. There is no merit to this claim. Even assuming *arguendo* plaintiff's obesity constitutes a severe impairment, the ALJ, as discussed below, included all the limitations Dr. Ella–Tamayo found in plaintiff's residual functional capacity ("RFC") and in the hypothetical question to the vocational expert.[5] A.R. 25, 1300, 1566–67. Therefore, any error was harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (citations and internal quotation marks omitted)); *Burch v. Barnhart*, 400 F.3d 676, 682–84 (9th Cir.2005) (Even if the ALJ should have addressed the claimant's obesity, his failure to do so was harmless error when the claimant, who has been represented by counsel since the administrative hearing, "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider.").

---

**4.** Dr. Ella–Tamayo found plaintiff was 61″ tall and weighed 194 pounds. A.R. 1297. At her most recent administrative hearing, plaintiff described herself as weighing 240 pounds and "morbid[ly] obese." A.R. 1564.

**5.** In assessing plaintiff's RFC, the ALJ, in accordance with Social Security terminology, *see*, e.g., SSR 85–15, 1985 WL 56857, *7 (S.S.A.), used the term "crouch" rather than "squat." A.R. 25, 1566. However, this is inconsequential since the terms are essentially synonymous. *See*, e.g., *Merriam–Webster's Collegiate Dictionary*, 1138 (10th ed.2002) (defining "squat" as "to cause (oneself) to crouch or sit on the ground"); *Filimoshyna v. Astrue*, 2009 WL 3627946, *8 (E.D.Cal.) ("Squatting is most similar to the term 'crouching' as used in the [Social Security] rulings."); *Stewart v. Astrue*, 2009 WL 537538, *18 (W.D.Mo.) ("'Squat'" means "'to sit in a low or crouching position with the legs drawn up closely beneath or in front of the body.'" (citation omitted)).

## V

A claimant's RFC is what she can still do despite her physical, mental, nonexertional, and other limitations. *Mayes*, 276 F.3d at 460; *see also Valentine*, 574 F.3d at 689 (The RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift).")'. Here, the ALJ found plaintiff "has the residual functional capacity to perform [limited] light work." [6] A.R. 25. In particular the ALJ concluded:

> The [plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 hours out of an 8–hour work day. She can sit for unrestricted periods of time. She is precluded from work at unprotected heights or with dangerous machinery. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She is limited to working with things rather than people.

*Id.* However, plaintiff claims the ALJ failed to properly consider the opinions of his treating psychiatrist, Dr. Maria Salanga, and non-examining psychiatrist, Dr. David Gross, in making this RFC determination. There is no merit to these contentions.

### A. *Dr. Salanga:*

■■■■ ᐧThe medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as

an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir.2008); *Reddick*, 157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725; *Valentine*, 574 F.3d at 692.

■■■■ On July 28, 2003, Maria T. Salanga, M.D., examined plaintiff, diagnosed her as having a bipolar-type schizoaffective disorder and a severe recurrent major depressive disorder with psychotic features, and determined plaintiff's Global Assessment of Functioning ("GAF") was 45.[7] A.R. 1255–58. Dr. Salanga found plaintiff was depressed and tearful, and had auditory hallucinations and poor cognitive functioning, although she was alert and oriented. A.R. 1257. On June 3, 2004, Dr. Salanga reevaluated plaintiff, diagnosed her with a recurrent and severe major depressive disorder with psychotic features, and determined plaintiff's GAF was 45. A.R. 1387–88. Dr. Salanga noted plaintiff was depressed, had auditory and visual hallucinations, her thought content was "paranoid/persecutory," her insight

---

**6.** Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up ᐧto 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking orᐧstanding, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of

these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).ᐧ

**7.** A GAF of 45 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. (Text Revision) 2000).

and judgment were "poor," her immediate memory was poor and she was not oriented to person, place, time and situation; however, her appearance, behavior, speech and thought process were within normal limits. A.R. 1388.

■■■■■ At Step Two, the ALJ found plaintiff has a severe mental impairment that limits her to working with things, rather than people. A.R. 25. However, plaintiff claims this finding is not supported by substantial evidence because the ALJ did not properly consider Dr. Salanga's medical opinion that plaintiff's GAF was 45. The Court disagrees. First, an ALJ is not required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); *Petree v. Astrue*, 260 Fed.Appx. 33, 42 (10th Cir. 2007) (Unpublished Disposition) ("[A] low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); *Ramos v. Barnhart*, 513 F.Supp.2d 249, 261 (E.D.Pa.2007) ("Clinicians use a GAF scale to identify an individuals' [sic] overall level of functioning, and a lower score 'may indicate problems that do not necessarily relate to the ability to hold a job.'" (citation omitted)); *Baker v. Astrue*, 2009 WL 279085, *3 (C.D.Cal.) ("In evaluating the severity of a claimant's mental impairments, a GAF score may help guide the ALJ's determination, but an ALJ is

not bound to consider it."); *Florence v. Astrue*, 2009 WL 1916397, *6 (C.D.Cal.) ("[W]ithout more, the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score."); 65 Fed.Reg. 50746, 50764–65 ("The GAF scale ... does not have a direct correlation to the severity requirements in our mental disorder listings.").

Second, and more importantly, the ALJ did consider Dr. Salanga's GAF determinations, but found they were not "entitled to significant weight" because "there is really no evidence to indicate the reliability of cross raters where a particular GAF score means a particular limitation in work ability or work capacity." A.R. 33. This is a specific and legitimate reason for rejecting Dr. Salanga's GAF determinations, *see, e.g., Borrie v. Astrue*, 2009 WL 2579497, *2 (C.D.Cal.) ("[T]he ALJ considered the GAF score, but finding such scores unreliable, did not find it mandated disability. This is a specific and legitimate reason for discounting the score."); *Taylor v. Astrue*, 2009 WL 4349553, *5 (C.D.Cal.) (same), and since Dr. Salanga did not set forth any functional limitations or otherwise comment on plaintiff's ability to work, the ALJ did not err. *Valentine*, 574 F.3d at 691.

**B. *Dr. Gross:***

■■■■■ "The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. However, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions." S.S.R. 96–6p, 1996 WL 374180, *2 (S.S.A.);[8] *see also* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State

---

**8.** Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regu-

lations. *Massachi v. Astrue,* 486 F.3d 1149, 1152 n. 6 (9th Cir.2007); *Ukolov v. Barnhart,*

agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence...."); *Sawyer v. Astrue*, 303 Fed.Appx. 453, 455 (9th Cir.2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.").

■ On March 22, 2004, nonexamining psychiatrist David E. Gross, M.D., opined plaintiff is moderately limited in her ability to perform various mental activities, including understanding, remembering and carrying out detailed instructions, and interacting appropriately with the general public. A.R. 1317–19, 1322. Dr. Gross summarized plaintiff's limitations by concluding plaintiff can remember short and simple instructions, can perform simple repetitive tasks for a full workday and workweek, and can work with peers and supervisors, but not the public. A.R. 1319.

■ Plaintiff claims the ALJ erred in not considering Dr. Gross' opinion is determining plaintiff's RFC. There is no basis for this claim since it is clear that the ALJ did consider Dr. Gross' opinion, *see* A.R. 22, 72,[9] concluding that it was accordance with his RFC determination restricting plaintiff to "working with things rather than people." A.R. 22–23, 72, 74. Thus, the ALJ's RFC assessment incorporated Dr. Gross' conclusion that plaintiff should not work with the public. To the extent the RFC assessment did not incorporate Dr. Gross' opinion that plaintiff is limited to simple repetitive tasks, any such error was harmless since, as set forth below, the vocational expert testified that even if plaintiff was limited to simple repetitive tasks, she could still work as an office helper or small products assembler II.[10]

420 F.3d 1002, 1005 n. 2 (9th Cir.2005). Social Security Rulings do not have the force of law, *Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 851 (9th Cir.1996); nevertheless, once published, they are binding upon ALJs and the Commissioner. *Holohan v. Massanari*, 246 F.3d 1195, 1202–03 n. 1 (9th Cir.2001); *Gatliff v. Comm'r of the Soc. Sec. Admin.*, 172 F.3d 690, 692 n. 2 (9th Cir.1999).

9. Specifically, the ALJ incorporated by reference his prior decision of December 21, 2004, which discussed Dr. Gross' opinion, and such incorporation is permissible. *See, e.g., Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("Although [ALJ] Kelly did not specifically address Dr. Dawson's opinion, she incorporated by reference ALJ Bernoski's discussions of the medical evidence."); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 n. 10 (C.D.Cal.2006) ("The ALJ made no Step Three finding on remand, but he incorporated by reference his earlier opinion in which he found plaintiff's condition does not meet or equal a listed impairment.").

10. The Dictionary of Occupational Titles ("DOT"), which is the Commissioner's primary source of reliable vocational information, *Johnson v. Shalala*, 60 F.3d 1428, 1434 n. 6 (9th Cir.1995); *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990), identifies the office helper (DOT no. 239.567–010) and small products assembler II (DOT no. 739.687–030) positions as having reasoning levels of "2," meaning these jobs require an employee to "[a]pply commonsense [sic] understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, 210, 772, 1011 (4th ed.1991). The vocational expert also testified that plaintiff could work as a cleaner in housekeeping (DOT no. 323.687–014), A.R. 1567, a job that has a reasoning level of "1," meaning an employee is required to "[a]pply commonsense [sic] understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these

A.R. 1567–68; *Tommasetti*, 533 F.3d at 1038; *Burch*, 400 F.3d at 682–84.

## VI

 At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1222 (9th Cir.2009); *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir.2007). There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[11] *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); *Bray*, 554 F.3d at 1223 n. 4. The Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations.'" *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (quoting *Johnson*, 60 F.3d at 1432).

 Hypothetical questions to a vocational expert must consider all of the claimant's limitations, *Valentine*, 574 F.3d at 690; *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir.2002), and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the

medical record." *Tackett*, 180 F.3d at 1101. At plaintiff's most recent administrative hearing, the ALJ asked vocational expert Sandra Fioretti the following hypothetical question:

> Assume a hypothetical individual the [plaintiff's] age, education, prior work experience. Assume this person is restricted to a light range of work, lifting and carrying 20 pounds occasionally, 10 pounds frequently, standing and walking six hours out of an eight-hour day, no work at unprotected heights, no work on dangerous machinery, occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. The person should work with things rather than with people, and first question is could such a person perform [plaintiff's] past work?
>
> * * *
>
> Is there other work in the regional or national economy such a person could perform?

A.R. 1566–67. In response, the vocational expert testified that plaintiff could perform her past work as a data entry clerk and also could work as a file clerk, which has 3,000 positions regionally and 40,000 nationally, an office helper, which has 1,500 positions regionally and 25,000 nationally,

---

situations encountered on the job." *Dictionary of Occupational Titles* at 248, 1011. Either of these reasoning levels is consistent with a limitation to simple repetitive tasks. *See Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th Cir.2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication-in other words, Reasoning Level 2 jobs."); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) ("[L]evel-two reasoning appears ... consistent with ... Plaintiff's inability to perform more than simple and repetitive tasks...."); *Meissl v. Barnhart*, 403 F.Supp.2d 981, 984 (C.D.Cal.2005) (plaintiff who could perform "simple tasks

... at a routine pace" could perform jobs with a reasoning level of 2).

11. The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." *Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 851 (9th Cir.1996) (citations omitted).

and a cleaner in housekeeping, which has 6,000 positions regionally and in excess of 70,000 positions nationally. A.R. 1567. The ALJ then asked:

> Hypothetical two, assume a hypothetical individual, same restrictions as in one. Person is going to be limited to occasional keyboarding, no more than 15 minutes at a time, two to three hours a day total. And no strenuous torquing or twisting of the wrists. And standing and walking is limited to four hours a day total, no more than 15 to 30 minutes at a time. And also the person is restricted to routine, repetitive tasks, entry level work. Are there jobs in the regional or national economy such a person could perform?

A.R. 1567–68. In response, the vocational expert testified that plaintiff could perform the job of office helper, which was eroded by 25 percent for the standing/walking limitation, leaving about 1,200 positions regionally and 19,000 nationally, and small products assembler II, which was eroded by 50 percent, leaving 4,800 positions regionally and in excess of 40,000 nationally. A.R. 1568.

The plaintiff claims the ALJ's decision must be reversed because the hypothetical questions to the vocational expert were "void of any mention of the mental impairments and limitations" as identified by Drs. Salanga and Gross. Jt. Stip. at 15:27–18:4, 18:25–19:4. Since this Court has determined the ALJ properly considered Dr. Salanga's opinion, and that any error in addressing Dr. Gross' opinion was harmless, plaintiff's claim lacks merit. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir.2008); *Burch*, 400 F.3d at 684. To the contrary, the vocational expert's testimony provides substantial evidence to support the ALJ's conclusion that plaintiff can perform a significant number of jobs in the national economy. *Valentine*, 574 F.3d at 694; *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir.2001)

## ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.