**Michael HUNTER, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**No. CV 11–01995–MAN.**

United States District Court, C.D. California.

June 14, 2012.

Judith S. Leland, Law Offices of Judith S. Leland, Downey, CA, for Plaintiff.

Timothy R. Bolin, SAUSA–Office of the U.S. Attorney, San Francisco, CA, Assistant U.S. Attorney LA–CV, AUSA–Office Of U.S. Attorney, Los Angeles, CA, Assistant U.S. Attorney LA–SSA, Office of the General Counsel for Social Security Adm., CA, for Defendant.

## MEMORANDUM OPINION AND ORDER

MARGARET A. NAGLE, United States Magistrate Judge.

Plaintiff filed a Complaint on March 8, 2011, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On April 8, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on November 28, 2011,[1] in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 1, 2008, plaintiff filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 92.) Plaintiff, who was born on March 11, 1954 (A.R. 185),[2] claims to have been disabled since April 24, 2003 (A.R. 16, 92), due to "spine injury" and "cognitive limits," as well as difficulties lifting more than five pounds and moving his neck (A.R. 106, 114, 278).

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff requested a hearing. (A.R.

---

1. The parties divided the Joint Stipulation into two parts, one setting forth plaintiff's portion of the Joint Stipulation (hereinafter "P. Joint Stip.") and the other setting forth the Commissioner's portion (hereinafter "C. Joint Stip.").

2. On the date of the ALJ's November 2, 2010 decision, plaintiff was 56 years old, which is defined as an individual of advanced age. (A.R. 22; *citing* 20 C.F.R. § 404.1563.)

92.) On June 2, 2009, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Jeffrey A. Hatfield (the "ALJ"). (*Id.*) Vocational expert Randi Langford–Hetrick also testified. (*Id.*) On November 19, 2009, the ALJ issued a partially favorable decision, finding plaintiff disabled from March 11, 2009, through the date of his decision. (A.R. 96.)

In a written brief dated January 4, 2010, plaintiff appealed the ALJ's November 19, 2009 decision to the Appeals Council on the ground that the ALJ erred in not fully considering the period before March 11, 2009. (A.R. 321–28.) Pursuant to a March 10, 2010 order, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ so that he could: (1) "[o]btain additional evidence regarding [plaintiff's] work activity after the alleged onset date and identify periods of [substantial gainful activity]"; (2) "[o]btain additional evidence concerning [plaintiff's] severe chronic neck pain and status-post two surgeries of the cervical spine"; (3) and "[g]ive further consideration to [plaintiff's] maximum [RFC] and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (A.R. 104–05.)

On October 13, 2010, plaintiff, who was again represented by an attorney, appeared and testified at a second administrative hearing before the ALJ. (A.R. 16.) Vocational expert Randi Langford–Hetrick also appeared and testified. (*Id.*) On November 2, 2010, the ALJ denied plaintiff's claim (A.R. 16–23), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1–5). That decision is now at issue in this action.

**3.** The record reflects that plaintiff had earnings of $5,841.15 in 2006, and $20,938.97 in

## SUMMARY OF ADMINISTRATIVE DECISION

In his November 2, 2010 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2009. (A.R. 18.) The ALJ also found that plaintiff has engaged in substantial gainful activity "during the period from his alleged onset date of April 24, 2003 through his date last insured of December 31, 2009." (*Id.*) As indicated in the ALJ's earlier, November 19, 2009 decision, plaintiff "worked [during 2006] for 3–4 months but not at the substantial gainful activity level." (A.R. 94.) In the November 2, 2010 decision now at issue, the ALJ notes that plaintiff "returned to work in 2009 and worked full time as an over-the-road truck driver."[3] (A.R. 19.)

The ALJ also determined that plaintiff has the severe impairments of "chronic neck pain," "status post two surgeries of the cervical spine," and "cognitive disorder." (A.R. 18.) The ALJ concluded that plaintiff had past relevant work ("PRW") as an electrician. (A.R. 21.) The ALJ also noted that the vocational expert found that plaintiff had prior work experience as a long-haul truck driver and sales associate. (*Id.*)

The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (A.R. 18.) After reviewing the record, the ALJ determined that, through the date last insured, plaintiff had the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 C.F.R. § 404.1567(c) except no climbing of ladders/ropes, occasional reaching overhead

2009. (A.R. 19, 260.)

bilaterally and with avoidance of working in [a] noisy environment. [Plaintiff] has mild restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace with no episodes of decompensation. Accordingly, [plaintiff] can perform simple, repetitive tasks, occasional low stress work with occasional interaction with co-workers/general public and in a structured environment.

(A.R. 20.)

The ALJ further concluded that, through the date last insured, plaintiff was unable to perform any past relevant work. (A.R. 21.) However, based on his RFC assessment and after having considered plaintiff's age, education,[4] work experience, and the testimony of the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff could perform, including "laundry laborer," "houseworker," and "hand packager." (A.R. 22.) Accordingly, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from April 24, 2003, the alleged onset date, through December 31, 2009, the date last insured . . . ." (A.R. 23.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.2007). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir.2003). "While infer-

ences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir.1988); *see also Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett*, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.' " *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006) (*quoting Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir.2006)); *see also Burch*, 400 F.3d at 679.

## DISCUSSION

Plaintiff claims that the ALJ did not consider properly: (1) the opinions of

---

4. The ALJ found that plaintiff "has a high school education, plus two years of college and is able to communicate in English." (A.R. 22.)

plaintiff's physicians; and (2) plaintiff's subjective pain testimony. (P. Joint Stip. at 3–13.)

### I. The ALJ Did Not Consider The Opinions Of Plaintiff's Physicians Properly.

■ It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.2001); 20 C.F.R. § 404.1527(d).

■ The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. *Magallanes*, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

In determining plaintiff's RFC, the ALJ stated that he "acknowledged" the conclusions of consultative examiner Dr. Sarah L. Maze, who performed a neurological evaluation of plaintiff and opined that plaintiff could perform a full range of heavy work, but the ALJ nevertheless gave plaintiff the "benefit of the doubt" and found that plaintiff "can perform a limited range of medium exertion [work]." (A.R. 19.) The ALJ also stated that he gave significant weight to the opinions of the medical consultants from the California Disability Services, who concluded that plaintiff did not have a severe mental impairment, "because their conclusions are consistent with the objective findings and the evidence of record." (A.R. 20.)

■ The ALJ failed, however, to consider properly the opinions of several of the treating, examining, and non-examining physicians. For example, the ALJ does not appear to have considered, weighed, or given appropriate reasons for rejecting the opinion of plaintiff's treating neurologist, James F. Haas, M.D. In a January 18, 2005 Permanent and Stationary Report by Primary Treating Physician, Dr. Haas diagnosed plaintiff with post-traumatic head syndrome, cervical strain syndrome, deconditioning complaints of knee and back pains, and lumbosacral sprain. (A.R. 409.) Based on his review of the record, his examination of plaintiff, and plaintiff's subjective complaints, Dr. Haas opined that plaintiff should be limited to light work.[5] (A.R. 411.) In his November 2, 2010 decision, the ALJ fails to mention, let alone give a specific and legitimate reason for rejecting, the opinion of Dr. Haas. This constitutes error.[6]

■ Similarly, it does not appear that the ALJ considered the opinions of plain-

---

**5.** In the ALJ's November 19, 2009 decision, he apparently agreed with the opinions of Dr. Haas and other physicians (discussed *infra*) who opined that plaintiff was limited to light work. Indeed, the ALJ stated in that opinion: "After careful consideration of the entire record, the [ALJ] finds that beginning on March 11, 2009, [plaintiff had] the residual function-

al capacity to perform light work . . . ." (A.R. 95.)

**6.** The Commissioner now contends that the ALJ committed no reversible error because: (1) he "implicitly rejected this opinion by limiting [p]laintiff to a range of medium work"; and (2) "Dr. Haas based his opinion on [p]laintiff's discredited subjective complaints,

tiff's treating physician Gilbert P. Hager, M.D., who diagnosed plaintiff with a history of concussions, postconcussive syndrome, mild cognitive impairment, memory loss, light sensitivity, headaches, insomnia, sleep disturbance, malaise and fatigue, anxiety/irritability, depression, and cervical pain. (A.R. 1739.) Dr. Hager noted, *inter alia*, that plaintiff "continues to exhibit significant cognitive impairments," has poor short-term memory, and has deficits in his long-term memory. (A.R. 1739.) Nothing in the Administrative Record establishes, or even suggests, that the ALJ considered the opinion of Dr. Hager, as required.[7]

Additionally, there is no evidence that the ALJ considered the opinion of workers' compensation physician Kourosh Shamlou, M.D., an orthopaedic surgeon. In his April 2004 evaluation, Dr. Shamlou: diagnosed plaintiff with post concussion headaches, degenerative disc disease with neck pain, and multiple rib fracture; opined that plaintiff would not be able to return to his pre-injury job duties; and continued plaintiff on temporary total disability. (A.R. 397–400.) In his May and June 2004 evaluations, Dr. Shamlou noted that plaintiff had the following work restrictions: "no repetitive turning of the neck"; "[n]ot able to keep head in one position greater than 15 min[utes]"; no driving; and "no heavy lifting, carrying, pushing or pulling."[8] (A.R. 401–03.) Dr. Shamlou also noted that if plaintiff's employer could not accommodate plaintiff's restrictions, plaintiff would continue on temporary total disability status. (*Id.*) In his August 2004 evaluation, Dr. Shamlou opined that plaintiff was limited to "heavy lifting, no repetitive turning of the neck [or] keeping the head in one position more than 15 minutes at a time[,] and no driving." (A.R. 406.) In addition, Dr. Shamlou noted that plaintiff should avoid working at heights, driving, and working with machinery. (A.R. 406.) Dr. Shamlou opined that plaintiff's disability status was permanent and stationary. (*Id.*) Once again, there is no evidence that the ALJ properly considered, weighed, or gave appropriate reasons for rejecting the opinion of Dr. Shamlou. This constitutes error.[9]

[and] the ALJ was entitled to reject it." (C. Joint Stip. at 4.) The ALJ's first reason is unavailing, because the ALJ must give specific and legitimate reasons for rejecting the opinion of a treating physician when it is contradicted. The ALJ's second reason is also unavailing, because as detailed *infra*, the ALJ did not discredit plaintiff's subjective complaints properly, and thus, the ALJ was not entitled to reject Dr. Haas's opinion on that ground. Moreover, the ALJ never proffered this as a reason for rejecting Dr. Haas's opinion. *See, e.g., Orn,* 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"); *Connett,* 340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the ALJ's ... decision based on evidence that the ALJ did not discuss").

7. The Commissioner now contends that the opinion of Dr. Hager is irrelevant, because it post-dated the time period under the ALJ's consideration—*to wit,* from the alleged onset date, April 24, 2003, through the date last insured, December 31, 2009—and thus, the ALJ was entitled to ignore it. (C. Joint Stip. at 5.) The Commissioner's argument is erroneous, because the Ninth Circuit has held that "[m]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir.1988), reaffirmed in *Lester,* 81 F.3d at 832.

8. In his May 2004 evaluation, Dr. Shamlou also found that plaintiff was restricted to "no prolonged forward or upward gazing" and "no computer work." (A.R. 401.)

9. The Commissioner now contends that the ALJ did not commit error in failing to consider the opinion of Dr. Shamlou, because the opinions of workers' compensation physicians "are not binding on the Social Security Administration." (C. Joint Stip. at 2.) However,

■ Lastly, it does not appear that the ALJ considered the opinion of State Agency reviewing physician Catherine A. Eskander, M.D., who opined, *inter alia,* that plaintiff should be restricted to light work (A.R. 1102–06.)[10] This constitutes error.[11]

while medical source opinions on issues reserved to the Commissioner, such as the determination of a claimant's ultimate disability, are not determinative or entitled to special weight based on the source of the medical opinion, it is not true that the Commissioner is free to disregard this information. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at * n. 8, 1996 SSR LEXIS 5, at *21 n. 8. Rather, the ALJ is instructed to consider such opinions in adjudicating a disability claim. As such, the Commissioner's first reason is unavailing.

The Commissioner also contends that the ALJ did not commit error in considering the opinion of Dr. Shamlou, because "Dr. Shamlou opined that [p]laintiff could return to work if his employer could accommodate certain restrictions," and "[i]n the social security context, if [p]laintiff [i]s able to do his job, he [i]s not disabled." (C. Joint Stip. at 2–3.) However, the Commissioner's contention is unpersuasive, because it is entirely unclear whether plaintiff's employer could accommodate plaintiff's restrictions, and thus, the Court cannot find the ALJ's failure to consider the opinion of Dr. Shamlou to be harmless.

Lastly the Commissioner contends that the ALJ's failure to address the opinion of Dr. Shamlou was harmless, because his opinion "would not have changed the ALJ's ultimate nondisability finding." (C. Joint Stip. at 3.) Specifically, the Commissioner asserts that Dr. Shamlou's opinion "did not indicate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months.'" (*Id.;* emphasis omitted.) However, as noted *supra,* in his last evaluation of plaintiff, Dr. Shamlou found that plaintiff, had various work restrictions and placed plaintiff on permanent and stationary disability status. Permanent and stationary status is defined as "the point when the employee has reached maximal medical improvement his or her condition is well stabilized *and unlikely to change substantially in the next year with or without medical treatment.*" 8 C.C.R. § 9811(I) (emphasis added); *see also* 8 C.C.R. § 9785(a)(8). As such, the Court cannot find

the ALJ's failure to consider the opinion of Dr. Shamlou to be harmless.

10. The Commissioner now contends that, because Dr. Eskander "opined that the medical evidence of record supported an inability to do heavy activities but also supported a [RFC] for light work," the ALJ "was entitled to resolve this ambiguity by finding that [p]laintiff could perform a range of medium work." (C. Joint Stip. at 5.) Critically, however, there is no evidence that the ALJ considered, let alone resolved, the apparent ambiguity in Dr. Eskander's opinion. As such, the Commissioner's reasoning is unpersuasive.

11. Plaintiff claims that the ALJ failed to consider other medical opinions of record. For example, plaintiff claims that the ALJ failed to consider the opinion of plaintiff's treating physician Jeffrey Sudeith, M.D., who, in 2003, opined on several occasions that plaintiff was limited to lifting five pounds. (*See, e.g.,* A.R. 338, 340–42, 344–45, 359, 362, 364, 367–68, 370–71, 374–77.) In response, the Commissioner contends that the ALJ did not commit any error in considering this opinion, because plaintiff engaged in substantial gainful activity in 2003. As the Commissioner properly notes, plaintiff had significant earnings in 2003. (A.R. 260.) However, while the ALJ did find that plaintiff engaged in substantial gainful activity during the period from the alleged onset date of April 24, 2003, through his date last insured of December 31, 2009, his November 2, 2010 decision only references plaintiff's earnings in 2009. (A.R. 18–19.) However, as this case is being remanded for the reasons set forth *infra,* the ALJ should revisit his consideration of Dr. Sudeith's opinion on remand.

Plaintiff also contends that the ALJ failed to consider the opinions of the State Agency reviewing physicians D. Gross M.D. (A.R. 1124–27), and L. Schwartz, M.D. (A.R. 1143–45), both of whom plaintiff alleges opined that he should be limited to light work. (P. Joint Stip. at 5.) As the Commissioner properly contends, it does not appear that Dr. Gross opined that plaintiff should be limited to light work. It does appear that Dr. Schwartz affirmed Dr. Eskander's finding that plaintiff should be limited to light work. In view of the fact that this case is being remanded, the

Accordingly, because the ALJ did not consider, weigh, and/or give appropriate reasons for rejecting the various medical opinions of record, as required, the ALJ committed reversible error.

## II. The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Not Credible.

 Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir.2004); *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins,* 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Thomas v. Barnhart,* 278 F.3d 947, 958–59 (9th Cir.2002); *see also* 20 C.F.R. § 404.1529(c).

 An ALJ may not rely on a plaintiff's daily activities to support an adverse credibility determination when those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis. *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990). As the Ninth Circuit noted in *Lester v. Chater,* the ALJ must evaluate claimant's " 'ability to work on a *sustained* basis.' " 81 F.3d at 833 (emphasis in original; citation omitted). A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989) (internal citations omitted).

 The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 21.) Further, the ALJ did not expressly find plaintiff to be a malingerer.[12] Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be clear and convincing.

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are *not credible* to the extent they are inconsistent with [the ALJ's RFC] assessment." (A.R. 21) Specifically, the ALJ stated that: (1) "[p]laintiff's pain testimony . . . is not consistent with the objective findings or the record as a whole"; (2) "there is very little evidence of treatment"; (3) there are inconsistencies in plaintiff's testimony regarding his ability to work at

---

ALJ should also revisit his consideration of these medical opinions.

12. As discussed in detail *infra,* in one of the psychological evaluation tests administered to plaintiff, it was noted that plaintiff's score reflected a high probability of malingering.

While the ALJ noted this result along with the other results of the psychological testing, neither the ALJ nor the physician administering the exam specifically found plaintiff to be a malingerer.

"the substantial gainful activity level"; (4) there are "discrepancies in [plaintiff's] performance on the Trails test"; (5) "[plaintiff]'s daily activities are ... inconsistent with his allegations"; and (6) "[plaintiff] does not appear to be too motivated to work and appears to be benefit seeking." (A.R. 19–21)

■■■■ The ALJ's first ground for rejecting plaintiff's testimony is unavailing. In his decision, the ALJ rejects plaintiff's pain testimony, because "it is not consistent with the objective findings or the record as a whole." (A.R. 19.) The ALJ notes, for example, that "[t]here is no evidence of a large, unintended weight loss due to a loss of appetite from pain. There is also no corroboration of severe sleep deprivation from pain, or concentration, attention or cognitive deficits from pain." (A.R. 20.) However, the failure of the medical record to corroborate a claimant's subjective symptom testimony fully is not, by itself, a legally sufficient basis for rejecting such testimony. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.2001); *Bunnell*, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings"). Thus, the ALJ's finding that the objective evidence does not support the extent of plaintiff's pain testimony cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. *See Varney v. Secretary*, 846 F.2d 581, 584 (9th Cir.1988); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986); *see also Burch*, 400 F.3d at 681.

■■■■ The ALJ's second reason for discrediting plaintiff—*to wit*, that "there is very little evidence of treatment"—is also unavailing. In support of his reasoning, the ALJ notes that, notwithstanding the fact that plaintiff underwent cervical fusion twice, "it is reasonable to assume that he would have sought out treatment modalities which alleviate severe and unremitting pain." (A.R. 19.). The ALJ specifically notes that plaintiff: "is not currently participating in physical therapy"; "does not use a TENS unit and he has not been referred to a pain clinic"; and "[t]here is also no evidence that he used home remedies, such as a heating pad or hot baths for pain relief." (*Id.*) Accordingly, the ALJ concluded that "it is reasonable to assume that [plaintiff's] pain is not as severe or as limiting as he alleged." (*Id.*)

As an initial matter, the sheer length of plaintiff's administrative record, which comprises 1,764 pages and is filled with treatment records for plaintiff, calls into question the legitimacy of the ALJ's contention. In fact, as plaintiff properly notes, the ALJ contradicts himself in the next sentence by stating that the "records from the Department of Veterans Affairs confirms [sic] [plaintiff]'s treatment for multiple complaints." (A.R. 19.) Further, although plaintiff may not have undertaken the treatment modalities noted by the ALJ, plaintiff has tried various other modalities to treat his pain. For example, beyond having undergone two surgical procedures on his cervical spine, plaintiff underwent a series of epidural steroid infusions to ameliorate his pain. (*See, e.g.*, A.R. 940–45, 949–52.) While plaintiff reported good pain relief with the first injection, plaintiff reported minimal, if any, pain relief with subsequent injections. (A.R. 911.) In addition, the record contains various pain management reports noting that plaintiff has taken significant medications to relieve his pain, including, *inter alia*, "Naprosyn as an anti-inflammatory"; "Flexeril for muscle spasm"; "Fiorinal for chronic migraines"; "Imitrex for chronic migraines"; "Neurotin for neuropathic pain"; and/or Vicodin as prescribed by plaintiff's surgeon for pain. (*See, e.g.*, A.R. 1171, 1176, 1180, 1183–84, 1186–87, 1189–

90, 1192–93, 1194–95.) Plaintiff also has undergone multiple C3 third occipital nerve block procedures to relieve his pain. While plaintiff received some temporary relief from these procedures, he still experiences pain in his neck with radiation to his occipital region. (*See, e.g.,* A.R. 1286.) Indeed, after failing to experience pain relief from the nerve block procedure, it was noted that plaintiff has "exhausted all potential interventional pain procedures" and "[a]t this stage [plaintiff] may benefit [from a] neurosurgery consult to explore the surgical options." (*Id.*) Accordingly, in view of the evidence of record, the ALJ's second reason does not' constitute a clear and convincing reason for discrediting plaintiff.

The ALJ also discredits plaintiff because "at the first hearing, he denied working at the substantial gainful activity level, but later at the second hearing, he admitted that he had worked all of 2009." (A.R. 21.) The ALJ misstates the record. As noted by plaintiff, at the first hearing, plaintiff testified that he had started working again January 2009. (A.R. 64.) In fact, plaintiff's counsel specifically asked that the ALJ consider plaintiff's 2009 work activity as a "trial work period" or, in the alternative, consider a closed period of benefits. (A.R. 62.) In other words, contrary to the ALJ's representation, plaintiff did not deny working in 2009 at the substantial gainful activity level at the first hearing, and thus, the ALJ's reasoning cannot constitute a clear and convincing reason for discrediting plaintiff.

■ The ALJ also found plaintiff to be not credible, because there were "discrepancies in [plaintiff's] performance on the Trails test" administered by clinical psychologist Charlene K. Krieg, Ph.D. (A.R.

21.) Specifically, the ALJ noted that plaintiff scored better on the more difficult Trail B items than the Trail A items. (*Id.*) In addition, the ALJ noted that plaintiff had an attitude of disinterest during the examination and scored in the highly probable range for malingering on the Test of Malingered Memory ("TOMM") exam. (A.R. 20.) Although not entirely clear, to the extent the ALJ discredits plaintiff because these discrepancies and/or inconsistencies are suggestive of malingering, the ALJ's reasoning is unpersuasive. As noted by plaintiff, Dr. Krieg noted on *multiple* occasions throughout his psychological evaluation that plaintiff "appeared to be putting forth his best effort"—a finding that is at odds with a finding of malingering. Moreover, beyond citing the results of the TOMM test, neither Dr. Krieg nor the ALJ found plaintiff to be a malingerer. As such, the ALJ's reasoning is unavailing.

■ The ALJ's next ground for finding plaintiff to be not credible—*to wit*, that plaintiff's daily activities are inconsistent with his allegations—is unpersuasive. In his decision, the ALJ noted that plaintiff "took care of his personal needs, did household chores, drove his car and spen[t] time taking his children to school and to their extracurricular activities." (A.R. 21.) The ALJ also noted that "[t]he record showed that in May 2010, [plaintiff] was getting ready to go on an outing with his wife." (*Id.*) The ALJ does not articulate, however, *how* plaintiff's daily activities are at odds with his alleged pain and mental and physical limitations. Further, the ALJ fails to explain how plaintiff's basic activities, light household chores, and outing with his wife translate into the ability to perform full-time work.[13] *See Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.

---

**13.** Moreover, as plaintiff properly notes, plaintiff's planned outing with his wife may have been "per the orders of his occupational therapist at the VA as part of [p]laintiff'[s] therapy program to improve his activities of daily living." (P. Joint Stip. at 11; *citing* A.R. 1421.)

2001). (noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"). Therefore, the ALJ failed to articulate a clear and convincing reason, as required, for finding plaintiff to be not credible.

■■■ The ALJ's last ground for discrediting plaintiff is also unpersuasive. The ALJ asserts that plaintiff "does not appear to be too motivated to work and appears to be benefit-seeking." (A.R. 21.) In support of this ground for discrediting plaintiff's pain testimony, the ALJ notes that plaintiff "requested a medical support letter from his doctor because he was at risk of losing his home." (*Id.*) It is unclear how this request actually undermines plaintiff's credibility. Further, contrary to the ALJ's statement, plaintiff appears motivated to work. As noted *supra,* plaintiff attempted to work both in 2006 and in 2009. Moreover, even the ALJ noted in his decision that plaintiff "had completed a course to renew his real estate license and was interested in purchasing/fixing/flipping homes." (*Id.*) As such, the ALJ's reason fails to constitute a clear and convincing reason for discrediting plaintiff.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony.[14]

### III. Remand Is Required.

■■■ The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel,* 211 F.3d 1172, 1175–78 (9th Cir.2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179–81.

■■■ Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.[15] *See, e.g., Benecke v.*

---

**14.** While the Commissioner now offers other reasons to explain the ALJ's credibility determination, the Court cannot entertain these post hoc rationalizations. *See, e.g., Connett,* 340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the—ALJ's credibility decision based on evidence that the ALJ did not discuss").

**15.** Plaintiff has requested that this Court "accept [p]laintiff's testimony as true and accept the opinions of all the physicians who treated and/or examined [p]laintiff, as well as reviewed [p]laintiffs medical records [as true]" and remand for the payment of benefits. (P. Joint. Stip. at 14–15.) In the Ninth Circuit, evidence should be credited and an immediate award of benefits directed when: "(1) the ALJ has failed to provide legally sufficient

reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Connett,* 340 F.3d at 876. In this case, however, because there are differing medical opinions regarding plaintiff's limitations and restrictions, it is not entirely clear from the record for what period the ALJ would' be required to find plaintiff disabled were such evidence credited. For example, in his last evaluation, Dr. Shamlou restricted plaintiff to heavy lifting; whereas, other physicians, whose opinions plaintiff has also requested that the Court credit, limited plaintiff to lifting ten pounds or less.

*Barnhart,* 379 F.3d 587, 593 (9th Cir.2004) (remand for further proceedings is appropriate if enhancement of the record would be useful); *McAllister v. Sullivan,* 888 F.2d 599, 603 (9th Cir.1989) (remand appropriate to remedy defects in the record). On remand, the ALJ must correct the above-mentioned deficiencies and errors. After doing so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform. The ALJ should also carefully reconsider whether plaintiff: (1) became disabled on March 11, 2009, as the ALJ concluded in his November 19, 2009 decision; and (2) had a closed period or periods of disability at any time from April 24, 2003, his alleged onset date, through March 10, 2009, or later.

### CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**