**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEBORAH L. BURCH,
          *Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,
          *Defendant-Appellee.*

No. 03-15986

D.C. No.
CV-02-05427-LJO

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, Magistrate, Presiding

Argued and Submitted
December 9, 2004—San Francisco, California

Filed January 20, 2005

Before: Diarmuid F. O'Scannlain, Robert E. Cowen,* and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Cowen

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

2867

## COUNSEL

Steven G. Rosales, Santa Fe Springs, California, for the appellant.

Elizabeth Noteware, San Francisco, California, for the appellee.

## OPINION

COWEN, Circuit Judge:

Deborah L. Burch appeals the district court's order affirming the decision of the Administrative Law Judge ("ALJ"), which denied her applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Social Security Act ("Act"). Burch alleged disability based on breast cancer, asthma, back pain, weakness, and depression. She contends that the ALJ committed the following errors which were overlooked by the district court: (1) rejecting her pain testimony without articulating a legally sufficient reason, and (2) failing to adequately consider her obesity throughout the sequential disability analysis. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

*Procedural Background*

The Social Security Administration denied Burch's applications for social security and disability insurance benefits ini-

tially and upon reconsideration. After conducting a hearing on the merits, the ALJ concluded that Burch was not disabled under the Act and denied her applications for benefits. The Appeals Council denied review. Burch then filed an action for judicial review in the United States District Court for the Eastern District of California. The district court affirmed the decision denying benefits and entered judgment for the Commissioner of Social Security (the "Commissioner"), and this appeal followed.

*Factual Background*

Burch was employed as a nursing assistant from August 1994 until February 1999, when she stopped working allegedly because of back pain and stress. On March 23, 1999, Dr. Kouroush Laaly stated that Burch was disabled as a result of her breast cancer. The medical evidence reflects that Burch underwent two mastectomies between May 1997 and May 1999 and had reconstructive surgery in 1999.

The medical record also documents Burch's lower back pain beginning in August 1997 with increasing degrees of severity. Burch initially described the pain as intermittent, and was prescribed Darvon, Motrin, and Tylenol. Approximately one year later, she was diagnosed with a cervical sprain. An MRI showed early degenerative disc disease but no evidence of disc bulging or protrusion at any level. In December 1999, Burch reported that she had constant back pain, which increases with bending and decreases with walking. A radiological report was issued at this time which showed mild degenerative disc disease and mild dextrascoliosis of the lumbar spine.

Burch's pulmonary disorders are also supported by the medical record. A pulmonary function test performed in April 1999 revealed mild to moderate obstructive broncho pulmonary disease, mild restricted lung disease and mild diffusion

abnormality. Due to these results, a physician recommended that Burch stop smoking.

The medical record also includes notations of Burch's obesity. In August 1997 her physician commented that she was "slightly obese" (E.R. at 254) and indicated one year later that she had gained 25 pounds in the past few months. In April 1999, a physician recommended that Burch join a medically supervised weight loss program.

At the hearing before the ALJ, Burch testified that she was 5'4" and weighed 215 pounds. She explained that her "normal" weight was 185 pounds but she was gaining weight because of stress. (E.R. at 26-27.) Burch further stated that standing for long periods causes pain from her neck down and numbness on her right side. She also explained that because her medication (Tylenol with codeine, Prozac and Elavils) is alone ineffective, she takes the pills with liquor to numb the pain and pass out. Burch stated that her physicians had not recommended surgery, physical therapy, chiropractic treatment, or home exercise for her back pain.

Burch further testified that she can stand for about 10-15 minutes, sit for 20-30 minutes and walk for 15-20 minutes. In terms of her daily activities, Burch explained that she watches television and does light housework. Approximately twice a week she sees her boyfriend with whom she socializes or watches television. Sometimes she takes care of the bills, shops and travels by bus. Burch also stated that on average twice a week she could not get dressed and sometimes limited her housework because of pain and fatigue. She lives with her seventeen year old nephew.

We review *de novo* the district court's order affirming an ALJ's denial of benefits. *See Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir. 1999). A decision to deny benefits will only be disturbed if it is not supported by "substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747,

750 (9th Cir. 1989) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). A decision of the ALJ will not be reversed for errors that are harmless. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

**[1]** To be eligible for social security or disability benefits, Burch must demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Because Burch was only insured for disability benefits through September 30, 1999, she must establish a disability on or prior to that date.

**[2]** Disability claims are evaluated using a five-step sequential analysis. 20 C.F.R. § 404.1520. In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

The claimant carries the initial burden of proving a disability in steps one through four of the analysis. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *See id.*

Here, the ALJ determined that Burch satisfied the criteria for steps one, two and four—she has not engaged in substantial gainful activity, she suffers from a "severe" impairment (though not a listed impairment) and is not capable of performing her past work. However, the ALJ determined that Burch has the RFC to perform a significant range of light work, including cashier, agricultural sorter and outside deliverer. *See* 20 C.F.R. § 416.967 (defining "light work").

## I.   Credibility Determination

Burch contends that the ALJ's credibility findings were not supported by substantial evidence in the record. She further argues that the reasons provided by the ALJ for discrediting her complaints were inadequate. While correctly stating the law, Burch's analysis is flawed.

**[3]** In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone. *See* SSR 96-7p (1996). In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *See Tonapetyan v. Halter*, 242 F.3d

1144, 1148 (9th Cir. 2001). Additionally, Social Security Ruling 88-13 lists a number of factors the ALJ may consider:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions; 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.

*Bunnell*, 947 F.2d at 346 (quoting SSR 88-13 (1988) (superceded by SSR 95-5p (1995)); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

**[4]** Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting pain testimony must be clear and convincing. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints—"[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks omitted).

**[5]** In this case, the ALJ articulated adequate reasons for partially rejecting Burch's pain testimony. Contrary to Burch's argument, the ALJ did not solely rely on the minimal objective evidence and Burch's daily activities in discrediting her testimony. Indeed, these factors were among those he relied on, however, the ALJ made additional specific findings to support his credibility determination.

**[6]** In considering Burch's testimony regarding her daily living, the ALJ explained that her daily activities "suggest that she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and her boyfriend. She is able to manage her own

finances and those of her nephew." (*Id.* at 4.) Although the evidence of Burch's daily activities may also admit of an interpretation more favorable to Burch, the ALJ's interpretation was rational, and "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallanes*, 881 F.2d at 750.

The ALJ was permitted to consider daily living activities in his credibility analysis. As this Court previously has explained, if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work).

The ALJ also considered the objective medical findings in discounting Burch's testimony: "[Burch] alleged that she has had severe low back pain since her mastectomy in 1997. However, the MRI and x-rays show only mild degenerative disc disease at L5-S1, and mild dextroscoliosis. There was no apparent disc herniation or nerve root impingement." (Decision, Nov. 16, 2000, at 4.) Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.

**[7]** Further, the ALJ partially discredited Burch's back pain testimony for lack of consistent treatment: "[Burch] had not had any treatment for her back for about three or four months." (*Id.*) Indeed, at no time during this "three or four month[ ]" period (nor, for that matter, at any other time) had surgery for Burch's back been suggested, had Burch had physical therapy for her back, had she been referred to or had she visited a chiropractor, nor had she been told to do even home exercises for her back. (*Id.*) That Burch's pain was "not

severe enough to motivate [her] to seek [these forms of] treatment," *Fair*, 885 F.2d at 604, even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain. The ALJ also partially discredited Burch's back pain testimony because "[t]he evidence regarding the nature, onset, location, frequency, intensity, and radiation of her alleged back pain is somewhat vague and non-specific. There is little evidence of precipitating, aggravating or mitigating factors. . . . Her obesity likely contributes to her back discomfort." (*Id.*)

Similarly, the ALJ partially discredited Burch's testimony of depression and fatigue because she did not seek any treatment or evaluation:

> [Burch] admits she is not being treated for [depression] . . . . At times, she has been given psychotropic medication, but she does not carry a diagnosis of depression and she has not received care from a mental health practitioner. . . . There is also no evidence of impairment in her ability to maintain concentration, persistence or pace. Further, there are no documented episodes of decompensation in the file.

(*Id.*) The ALJ is permitted to consider lack of treatment in his credibility determination.

Based on the clear, convincing and specific reasons for partially rejecting Burch's pain testimony and the substantial evidence to support his determination, we conclude that the ALJ properly evaluated the testimony.

## II. Consideration of Obesity

Burch next argues that the ALJ erred in failing to properly consider her obesity throughout the sequential disability analysis. She asserts that the ALJ is required to consider the inter-

active effects that obesity has on her other impairments and the combined effect of those impairments.

Burch's entire obesity argument relies on this Court's recent decision in *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003). However, that case is distinguishable from the case at bar. In *Celaya*, this Court reasoned that the ALJ should have considered obesity as a disabling factor in the sequential analysis, even though not explicitly raised by claimant, for three reasons:

> First, it was raised implicitly in Celaya's report of symptoms. Second, it was clear from the record that Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illness. Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

*Id.* at 1182.

Here, the record does not indicate that Burch's obesity exacerbated her other impairments (other than possibly her back pain). More significantly, Burch was represented by counsel. While this Court mentioned in *Celaya* that even where a claimant is represented by counsel the ALJ has some burden to develop the record, this Court did not specify the parameters of that burden. *Id.*

**[8]** Under the circumstances in this case, we find that the ALJ did not commit reversible error by not considering Burch's obesity in step two of the sequential analysis. According to the Social Security Rules, obesity, as other medical impairments, will be deemed a "severe" impairment, "when alone or in combination with another medically determinable physical or mental impairment(s), it significantly lim-

its an individual's physical or mental ability to do basic work activities." SSR 02-01p (2002). In determining whether a claimant's obesity is a severe impairment, an ALJ must "do an individualized assessment of the impact of obesity on an individual's functioning." *Id.*

Here, the ALJ did not find that Burch's obesity was a "severe" impairment: "The medical evidence indicates that the claimant has status post carcinoma of the left breast, status post right simple mastectomy, lumbar degenerative disc disease and chronic obstructive pulmonary disease, which are severe within the meaning of the Regulations . . . ." (Decision, Nov. 16, 2000, at 2.) Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.

**[9]** The ALJ did not err in concluding in step three that Burch's impairments did not meet or equal a listing impairment. As obesity is not a separately listed impairment, a claimant will be deemed to meet the requirements if "there is an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-01p (2002).

Equivalence may also be determined if a claimant has multiple impairments, including obesity, none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment. *See id.* The Rule however explains that:

> [An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case *based on the information in the case record.*

*Id.* (emphasis added).

Although Burch contends that the ALJ erred in not considering obesity in determining whether she meets or equals a listing impairment, she does not specify which listing she believes she meets or equals. Further, she does not set forth any evidence which would support the diagnosis and findings of a listed impairment. 20 C.F.R. § 404.1525(d). The district court correctly explained that Burch "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." (Order, Mar. 24, 2003, at 14.) This Court has held that a claimant carries the initial burden of proving a disability. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (in distinguishing *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990), this Court determined that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment).

**[10]** As the Social Security Ruling explains, each case should be evaluated based on the record. SSR 02-01p (2002). The district court properly noted:

> There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning. Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present

> any testimony or other evidence at her hearing that her obesity impaired her ability to work.

(Order, Mar. 24, 2003, at 13.) Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. In fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that Burch is obese, and recommended that she participate in a medically supervised weight loss program. We therefore conclude that the ALJ did not commit reversible error by failing to consider Burch's obesity in determining whether she met or equaled the requirements of a listed impairment.

Finally, the ALJ did not err in step five of the analysis as he considered Burch's obesity in making his determinations regarding RFC and vocational ability. According to the Social Security Rules, in evaluating obesity to determine a claimant's RFC, the ALJ's assessment "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 02-01p (2002). As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments. *See id.*

Further, as Social Security Ruling 96-8p (1996) provides:

> In assessing RFC, the adjudicator must consider only limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

Here, the ALJ acknowledged that physicians' notes indicate Burch gained approximately 25 pounds in two months, that

she weighed 222 pounds in February 2000 and that she is "somewhat obese." (Decision, Nov. 16, 2000, at 2, 3, 4.) He also recognized that Burch's obesity likely contributed to her back discomfort. (*Id*. at 4.) After weighing the evidence, the ALJ concluded that Burch has the RFC to perform a significant (though not full) range of light work: "She is able to lift and carry 20 pounds occasionally and 10 pounds frequently, and sit, stand and/ or walk six hours per day. Additionally, she is precluded from activities requiring frequent reaching overhead. She must also avoid concentrated exposure to pulmonary irritants." (*Id.* at 6.)

[11] Based on the record, the ALJ adequately considered Burch's obesity in his RFC determination. Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider.

Burch argues that the ALJ should have included obesity in the hypothetical to the vocational expert. As she asserts, the issue of whether an individual who is obese can compete in the competitive workforce is a question best left to a vocational expert. We disagree, and find no error in the hypothetical given. The ALJ presented all of Burch's limitations and restrictions supported by the record to the vocational expert. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). There is no additional burden on the ALJ to question the vocational expert regarding the existence of discrimination in the job market based on obesity. Burch has not cited, and we have not found, any support for this novel approach.

Because the ALJ provided legally sufficient reasons for partially rejecting Burch's pain testimony and the ALJ properly considered Burch's obesity to the extent required based on the record, we affirm.

**AFFIRMED.**