**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 10 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CYNTHIA M. LIND,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

Defendant-Appellee.

No. 08-56933

D.C. No. 07-cv-1395-LAB-WMC

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Submitted March 5, 2010[**]
Pasadena, California

Before: RYMER, WARDLAW, Circuit Judges, and MCNAMEE,[***] Senior District
Judge.

Cynthia Lind appeals the district court's judgment affirming the

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Stephen M. McNamee, Senior United States District
Judge for the District of Arizona, sitting by designation.

Commissioner's partial denial of her application for Social Security Disability insurance benefits under Title II of the Social Security Act. Lind alleges disability beginning on February, 1, 2003, due to carpal tunnel syndrome, osteoporosis, degenerative disc disease of the cervical spine, and chronic right ankle pain. As the Administrative Law Judge ("ALJ") found that Lind was entitled to benefits starting on October 1, 2003, Lind appeals the denial of benefits only for the eight-month period of February 1, 2003 to October 1, 2003 ("relevant period"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo the district court's order upholding the denial of benefits. *See Rollins v. Massanari*, 261 F.3d 853, 855-56 (9th Cir. 2001). We may reverse the Commissioner's decision "only if it is not supported by substantial evidence or if it is based on legal error." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "The same standard applies where the ALJ has awarded benefits and the claimant seeks additional benefits . . . ." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citation omitted).

Lind first argues that the ALJ erred at step two by finding that she was not severely impaired by her carpal tunnel syndrome during the relevant period.[1] We

---

[1] The parties are familiar with the factual and procedural history of this case and we do not recount it in detail here.

disagree. The finding by the ALJ that Lind's carpal tunnel syndrome was not a severe impairment during the relevant period was supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). The reports from treating physicians during the relevant period fail to show any significant functional limitations associated with Lind's wrist or hand. On April 2, 2003, Lind's upper and lower extremities and musculoskeletal system were noted as unremarkable, with no clubbing, redness, or swelling. Likewise, on June 2, 2003, the examination of Lind's upper and lower extremities was normal. Lind's reliance on the June 29, 2001, assessment by Dr. Patterson and the August 3, 2001, progress notes fail to provide sufficient medical evidence to support an earlier onset date. Not only were the reports generated eighteen months before the alleged onset date, but they also contained no finding of numbness or tingling.

In addition to the medical evidence, Lind's own testimony and complaints to treating and examining physicians undermine her position that she was severely impaired during the relevant period. Lind's reports to her doctors of numbness and tingling, an indicator of the severity of her carpal tunnel syndrome, occurred after October 2003. On February 10, 2004, Lind complained to Dr. Kvasnicka that she had been experiencing intermittent tingling in her hands that had started two months earlier. Likewise, on March 25, 2004, Lind told neurologist Dr. Romine

that the numbness and tingling in her hands started six months earlier. The ALJ used these statements by Lind to determine the October 1, 2003 date for award of benefits.

Substantial evidence also supported the ALJ's finding that Lind's right ankle pain was not a severe impairment. Although Dr. Patterson observed right ankle crepitus (crackling sound) in June 2001, no swelling, tenderness, or other abnormalities were found in Lind's ligaments or tendons. Furthermore, on April 2, 2003, Lind denied gait disturbances and joint pain and no abnormalities were observed in Lind's joints by Dr. Kvasnicka. Contrary to Lind's assertion, the ALJ explicitly stated that he considered Social Security Ruling 96-6p and the findings of the state consultants in determining Lind's residual functional capacity ("RFC"). Lind mischaracterizes the April 27, 2004, report by state consultant Dr. Brodsky. While Dr. Brodsky noted chronic right ankle pain/instability, Dr. Brodsky did not find any limitation on Lind's ability to stand or walk and there was no determination that this was a severe impairment.

Lind next argues that the ALJ erred in finding that Lind could perform the full range of light work activity prior to October 1, 2003. It was Lind's burden to prove that she was unable to perform light work during the relevant period. *Thomas v. Barnhart*, 278 F.3d 947, 954-55 (9th Cir. 2002). As the ALJ found, no

objective medical evidence supported a finding that Lind was unable to frequently lift up to ten pounds during the relevant period. *See* 20 C.F.R. § 404.1567(b) (light work involves lifting no more than twenty pounds occasionally and ten pounds frequently). The ALJ properly relied on the opinion of Dr. Doran in assessing Lind's capacity for light work. "The opinions of non-treating or non-examining physicians may [] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Dr. Doran's findings were based on objective evidence gathered from the treating and examining physicians' reports which the ALJ determined did not comport with Lind's subjective symptoms. Since the onset date of Lind's disability was an issue, the ALJ properly obtained medical expert testimony from Dr. Doran. Social Security Ruling ("SSR") 83-20; *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991). Dr. Doran's testimony regarding Lind's functional limitation of carrying five pounds was based upon Dr. Pacelli's RFC assessment in September 2004, outside the relevant period. Therefore, no material conflict exists between the opinions of the ALJ and medical expert, Dr. Doran. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Although Lind claims that the ALJ failed to conduct a function-by-function analysis to determine Lind's RFC, the ALJ properly relied on the function-by-

function assessment of doctors determining that Lind could perform light work during the relevant period. The ALJ's opinion incorporated the testimony of Dr. Doran who stated that the function-by-function analysis done by Dr. Brodsky represented a composite of all the evidence. This assessment concluded that Lind could lift twenty pounds occasionally and ten pounds frequently with only manual manipulation limitations. Because the assessment was consistent with the other medical evidence and the ALJ provided a legitimate justification for its adoption, the incorporation of Dr. Doran's assessment meets the requirements of SSR 96-8p. The ALJ is not required to repeat the function-by-function analysis.

Lind next argues that the ALJ's finding that she could perform her past relevant work prior to October 1, 2003, was not based upon substantial evidence. Any error by the ALJ in considering jobs that did not qualify as past relevant work was harmless because the ALJ found that Lind could perform her past relevant work as a customer service representative, and the ability to perform one of her past jobs is sufficient to meet the standard.[2] *See Burch*, 400 F.3d at 679.

---

[2]    The substantial gainful activity standard is not met when a claimant's earnings are reduced below the substantial gainful activity earning level (less than $700/month not adjusted for inflation) or when a claimant worked three months or less due to her impairment. *See* 20 C.F.R. § 404.1574(b)(2), (c)(1), (c)(3). Lind held the position of telephone solicitor for about two weeks and earned $564.00, and thus, the ALJ's finding of substantial gainful activity was in error. Moreover,
(continued...)

Additionally, the ALJ's failure to inquire as to potential conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT") was harmless error. The vocational expert provided sufficient support for his conclusion based on Lind's limitations as given by the ALJ and her past relevant work as a customer service representative. SSR 00-4p; *see also Massachi v. Astrue*, 486 F.3d 1149, 1153-54 & n.19 (9th Cir. 2007) (ALJ's failure to ask vocational expert whether testimony conflicted with the DOT and, if so, whether there was a reasonable explanation for the conflict was a harmless procedural error where no conflict existed or the expert provided "sufficient support for her conclusion" so as to justify any potential conflicts).

Finally, Lind argues that the ALJ erred in relying on the vocational expert's testimony in response to an incomplete hypothetical. Based on the foregoing, the hypothetical that the ALJ posed to the vocational expert included "all the limitations and restrictions of [Lind]" that the ALJ found, and was therefore proper. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

While it is often difficult to determine with specificity the exact onset date of a disability, the overwhelming evidence supports the ALJ's decision that Lind was

---

[2](...continued)
the ALJ misidentified Lind's "sales representative" position as "parts order clerk."

disabled after October 1, 2003, and not at an earlier date.

**AFFIRMED**.