**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ROBERT HOWARD GASTON,

         Plaintiff - Appellant,

  v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

         Defendant - Appellee.

No. 12-35818

D.C. No. 3:11-cv-00339-JE

MEMORANDUM*

Appeal from the United States District Court
for the District of Oregon
John Jelderks, Magistrate Judge, Presiding

Submitted May 14, 2014**
Portland, Oregon

Before: ALARCÓN, TASHIMA, and IKUTA, Circuit Judges.

---

    * This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    ** On March 27, 2014, the panel granted Appellant's unopposed motion to waive oral argument and submit this case on the briefs. Fed. R. App. P. 34(a)(2).

Robert Howard Gaston appeals from a district court judgment affirming the Commissioner of Social Security's final decision denying his application for Social Security Disability benefits and Supplemental Security Income. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I

Gaston seeks review of the ALJ's determination that, separately or taken together, his severe impairments did not meet or medically equal Listing 1.02A (major dysfunction of a joint). To be determined to be presumptively disabled, Gaston needed to show either that one or more of his impairments *meets* all of the characteristics of Listing 1.02A or that his symptoms and the medical evidence demonstrate that one or more of his impairments *equals* the characteristics of a relevant listed impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The ALJ's determination that Gaston failed to demonstrate that his knee impairment meets each of the characteristics for Listing 1.02A is supported by substantial evidence, including medical evidence showing that Gaston had full range of motion in his knees. *Id.* at 1099–1100. Additionally, although the characteristics of Listing 1.02A require "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A, the record does not

2

include such findings. Accordingly, the ALJ did not err in concluding that Gaston's knee impairment does not meet Listing 1.02A. Moreover, although the ALJ's conclusion regarding the medical equivalence of Gaston's impairments was stated in a summary fashion, the ALJ was not required to provide an in-depth equivalency analysis because Gaston did not present medical evidence showing that his knee impairment, or his shoulder and knee impairments taken together, medically equal Listing 1.02A or any other listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

## II

Gaston also challenges the ALJ's adverse credibility determination regarding his testimony about the severity of his symptoms. Where a claimant produces medical evidence of an impairment that is reasonably expected to produce some degree of the symptoms alleged, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Here, the ALJ's adverse credibility determination was based on uncontested objective medical evidence that is inconsistent with Gaston's allegations of

3

disabling levels of pain. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Additionally, the ALJ considered the level of Gaston's daily activities as a ground for discounting his testimony regarding the intensity and effects of his pain to the extent that it was inconsistent with the ALJ's Residual Functional Capacity assessment. This is a specific and permissible consideration supported by substantial evidence in the record. *See Burch*, 400 F.3d at 681 ("The ALJ was permitted to consider daily living activities in his credibility analysis.").

## III

Gaston advances three arguments related to the ALJ's determination that there are a significant number of jobs in the national economy that Gaston can perform.

## A

First, Gaston contends that the hypothetical the ALJ posed to the Vocational Expert ("VE") was flawed because it did not include all of Gaston's relevant limitations. Gaston also challenges the hypothetical posed by the ALJ in that it included a limitation to "occasional overhead reaching," which is inconsistent with

the opinion of an examining physician, whose opinion the ALJ had credited, that Gaston had a limited ability to reach in all directions, including overhead.

"If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Here, however, all but one of the assumptions in the hypothetical the ALJ posed to the VE were supported by the medical evidence in the record, and the ALJ had properly discounted Gaston's testimony to the extent that it was inconsistent with that evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ's failure to include in the hypothetical a limitation on reaching in all directions was harmless error because the position of surveillance system monitor, identified by the VE as a position Gaston could perform, does not require such ability. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (concluding that "[w]hether or not the ALJ erred in not including all of [the claimant's] limitations in a hypothetical," such error was harmless where the excluded limitation "was *not relevant* in deciding whether [the claimant] could perform his past work as a receiving clerk/inspector"); *see also Dictionary of Occupational Titles* § 379.367–010 (4th ed. 1991) (describing requirements for position of surveillance-system monitor).

**B**

Second, Gaston maintains that, with 1,240 jobs in the local economy and 142,000 jobs in the national economy, the position of surveillance system monitor does not exist in significant numbers to support a conclusion that Gaston is capable of making a successful adjustment to other available work.

There is no bright-line test to determine what constitutes a "significant number" of jobs in the local or national economy. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014). We have, however, upheld the Commissioner's findings based on a similar number of jobs being available in the local and national economies. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in Oregon constituted significant work); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (1,000 to 1,500 jobs in the local area alone was significant); *Barker v. Sec'y of HHS*, 882 F.2d 1474, 1478–79 (9th Cir. 1989) (1,266 jobs in the Los Angeles/Orange County, California area "within the parameters of 'significant numbers'" found in other cases). Therefore, the ALJ's determination that there exist a significant number of jobs Gaston could perform is supported by substantial evidence.

**C**

6

Third, Gaston argues for the first time on appeal that the VE's testimony is unreliable because the Dictionary of Occupational Titles code she cited during her testimony is for a surveillance systems monitor in public transportation terminals, but the position she described in her testimony was for the occupation in a retail setting. This claim has been forfeited, however, because Gaston failed to raise it before the district court. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (referencing "the general rule that the court will not consider an issue raised for the first time on appeal").

**AFFIRMED.**