FILED
United States Court of Appeals
Tenth Circuit

October 21, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARTIN MENDEZ,

      Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant-Appellee.

No. 14-1052
(D.C. No. 1:12-CV-02823-LTB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

Martin Mendez appeals a district court order affirming the Commissioner's

denial of disability and supplemental security income benefits. Mr. Mendez contends

an administrative law judge (ALJ) erred in 1) assessing his credibility and residual

functional capacity (RFC); 2) discounting his treating physician's opinion; and

3) finding that he could perform other work. For the following reasons, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Mr. Mendez is a high school graduate with experience working as a general foreman and installer in the heating, ventilation, and air conditioning industry. In 2009, he stopped working and applied for benefits, claiming he was disabled by a bad knee, gout, and back problems. He also suffered from hyperthyroidism and later was diagnosed with diabetes. Despite these ailments, Mr. Mendez was looking for work and collecting unemployment benefits throughout the pendency of his application. Yet in conjunction with his disability application, Mr. Mendez reported that he was completely unable to work. He also testified at a hearing with the ALJ that the most he could walk was one block with the use of a cane and that pain prevented him from doing much when he experienced a flare-up of gout.

After the hearing, the ALJ concluded at step five of the five-step sequential evaluation process, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining the process), that Mr. Mendez was not disabled. The ALJ determined that Mr. Mendez had severe impairments of osteoarthritis in both of his knees, gout, and diabetes mellitus with neuropathy. But the ALJ observed that Mr. Mendez's hyperthyroidism was well-controlled and his back problems were mild with no resulting limitations. With these conditions, the ALJ found that Mr. Mendez retained the RFC to perform a restricted range of light work. The ALJ also found that Mr. Mendez was not credible and that his treating physician's opinion was not entitled to controlling weight. Additionally, relying on

the testimony of a vocational expert (VE), the ALJ determined that Mr. Mendez could transition to other jobs, including a gate guard, a furniture rental clerk, and a telemarketer. Thus, the ALJ concluded that Mr. Mendez was not entitled to benefits. The Appeals Council denied review, and the district court affirmed.

II

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

A. *ALJ's RFC Assessment and Adverse Credibility Finding*

We first consider the ALJ's RFC assessment and adverse credibility finding. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined."). The ALJ determined that Mr. Mendez retained the RFC to perform light work with the following restrictions:

- lifting or carrying ten pounds frequently and twenty pounds occasionally,

- standing and/or walking for a total of two hours with normal breaks,

- sitting for a total of six hours with normal breaks,

- pushing and pulling with his arms within his allowed weight restrictions but avoiding pushing and pulling with his legs,

- avoiding unprotected heights and moving machinery,

- occasional climbing, stooping, crouching, kneeling, and crawling,

- avoiding climbing ladders, ropes or scaffolds, and

- avoiding repetitive bending and squatting.

Aplt. App. at 23. In assessing this RFC, the ALJ recognized that Mr. Mendez's impairments could cause his alleged symptoms, but she discredited his statements concerning the intensity, persistence, and limiting effects of those symptoms. On appeal, Mr. Mendez argues that the ALJ's RFC assessment fails to account for his complaints of fatigue and pain, as well as his obesity. He says the ALJ wrongly discredited him simply because he was collecting unemployment benefits.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). Nevertheless, an ALJ's adverse credibility finding "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

Initially, Mr. Mendez seemingly stipulates that his receipt of unemployment benefits was an appropriate factor that the ALJ could consider with the rest of the

evidence in evaluating his credibility. He contends, however, that the ALJ erred in relying almost exclusively on that factor. But the ALJ cited other substantial evidence supporting her adverse credibility finding, including that Mr. Mendez was looking for work as a foreman while claiming to be disabled, which was a legitimate ground for discounting his credibility, *see Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (observing that claimant's interest in returning to work supported adverse credibility finding). Although Mr. Mendez doubted he could actually do the work, we have no authority to reweigh his testimony, which still supports the ALJ's finding. *See Lax*, 489 F.3d 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (internal quotation marks omitted)).

The ALJ also cited inconsistencies between Mr. Mendez's testimony and the record, including the frequency of his gout flare-ups and the limiting effects of his symptoms. More specifically, the ALJ observed that Mr. Mendez had stated that he experienced a gout flare-up every two to three months, though there was no evidence of any flare-ups or use of gout medication since his amended onset date. The ALJ also observed that while Mr. Mendez complained of pain in his legs and feet, his diabetes was well-controlled and physical examinations indicated that he retained full strength and a normal gait, despite his osteoarthritis. Moreover, Mr. Mendez claimed that he could stand for only five to ten minutes and could walk for only one block with a cane, but the ALJ cited evidence indicating that he had lost a significant

amount of weight through diet and exercise, including riding an exercise bike and lifting weights. The ALJ found that "[t]hese activities called into question the validity of [Mr. Mendez's] allegations that he required a cane and experienced symptoms of such severity as to preclude work." Aplt. App. at 25. This substantial evidence supports the ALJ's finding that Mr. Mendez was not fully credible.

Nevertheless, and notwithstanding the ALJ's adverse credibility finding, Mr. Mendez contends the ALJ's RFC assessment fails to account for his complaints of fatigue. He says there was evidence of fatigue that the ALJ should have expressly discussed. This argument is unavailing, however, because although an ALJ must consider all the evidence, she "is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Rather, in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* at 1010.

In 2008, Mr. Mendez reported experiencing fatigue to his doctor, who assessed mild hypothyroidism. Aplt. App. at 232-33. His doctor increased his thyroid medication to address his fatigue, *id.* at 230-31, and by February 2009, she noted that Mr. Mendez was "not having symptoms of hyp[o]thyroidism," *id.* at 211. Citing these records, the ALJ observed that Mr. Mendez's medication had "been effective in managing his hypothyroidism and has not caused any side effects." *Id.* at 23. She therefore concluded that "[his] hypothyroidism has been controlled via conservative

measures without any side effects." *Id.*  Although the ALJ did not expressly discuss

Mr. Mendez's interim claims of fatigue, those claims were not significantly probative

because his symptoms had resolved.

Mr. Mendez also testified that he experienced fatigue caused by neuropathic

pain, which kept him awake at night.  Contrary to Mr. Mendez's assertion, however,

the ALJ considered these symptoms, noting that Mr. Mendez was "prescribed

gabapentin for management of his neuropathic pain and later amitryptiline as it was

thought some of [his] alleged nighttime pain might be attributable [to] restless leg

syndrome." *Id.* at 25.  Although the ALJ did not explicitly discuss his claims of

fatigue as an independent, residual effect of his neuropathic pain, again, she was not

obligated to because those claims were not significantly probative in light of the

ALJ's adverse credibility finding. *See Clifton*, 79 F.3d at 1009-10.  The ALJ stated

she had "considered all symptoms and the extent to which these symptoms can

reasonably be accepted as consistent with the objective medical evidence and other

evidence."  Aplt. App. at 23.  When an "ALJ indicates [she] has considered all the

evidence[,] our practice is to take the ALJ at [her] word." *Wall v. Astrue*, 561 F.3d

1048, 1070 (10th Cir. 2009) (internal quotation marks omitted).[1]

---

[1]  Mr. Mendez also insists the ALJ failed to consider his sleep apnea, despite the fact that "[t]he diagnosis of 'sleep apnea' appears in the record six times."  Aplt. Br. at 27.  This argument is meritless because each of Mr. Mendez's six record citations indicates that he *denied* a history of sleep apnea. *See* Aplt. App. at 278, 282, 286, 299, 304, 308.

- 7 -

We are also unpersuaded that the ALJ failed to account for Mr. Mendez's pain. As we have explained,

> [t]he framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). In assessing the credibility of a claimant's complaints of pain, the ALJ should consider

> [t]he levels of medication and their effectiveness, the extensiveness of the attempts (medical and nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly with the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation marks omitted).

In addition to his neuropathic pain, Mr. Mendez complained of gout in his hands, elbows, wrists, knees, and toes. He said he experienced pain when he had a gout flare-up and that his knees were "pretty severe" and hurt even when he did not have a flare-up. Aplt. App. at 52. Mr. Mendez also testified that the most he could sit was fifteen minutes, the most he could stand was five to ten minutes, and the most he could walk was one block using a cane.

The ALJ acknowledged that Mr. Mendez's impairments could cause the symptoms he alleged, but she refused to credit his testimony concerning the limiting

effects of his pain, in part because his allegations were not corroborated by objective medical evidence. Regarding his neuropathic pain, the ALJ noted that it was treated with medication and his "physical examination revealed normal reflexes and gait, along with only mild sensory abnormalities in the feet." *Id.* at 25. The ALJ cited treatment records indicating that Mr. Mendez's diabetes was well-controlled, *id.* at 288, while another doctor had prescribed new medication because he suspected that Mr. Mendez's pain could have been attributable to restless leg syndrome, *id.* at 305. Regarding his gout, the ALJ observed that treatment notes as of the amended onset date (June 19, 2009) reflected no "significant reports of flares or acute treatment." *Id.* at 24. Although Mr. Mendez had previously experienced an episode of gout in January 2009, by February of that year he reported that his symptoms had "nearly resolved completely." *Id.* at 211. Moreover, the ALJ pointed out that this absence of any acute gout flare-ups or treatment since the June 2009 onset date was consistent with an October 2009 consultative examination report, which was "essentially normal" and indicated that Mr. Mendez did not require or use any assistive devices. *Id.* at 24. Also, the ALJ noted that his knee pain had been treated conservatively with two injections and ibuprofen and he declined an MRI because he was "feeling better," *id.* at 25 (internal quotation marks omitted). Last, regarding Mr. Mendez's back pain, although the ALJ overlooked two specific complaints of back pain, she considered the treatment records documenting those complaints and observed that they had "not resulted in any vocationally relevant limitations." *Id.* at 23.

Additionally, the ALJ noted that "diagnostic imaging of [Mr. Mendez's] back . . . revealed mild degenerative changes," *id.*, which Mr. Mendez concedes the ALJ accounted for by incorporating stooping limitations into her RFC finding.

Apart from the objective evidence, the ALJ also found that Mr. Mendez's allegations of disabling pain were inconsistent with his activities, which included lifting weights and riding an exercise bike. Indeed, as the ALJ observed, one progress note described Mr. Mendez as "a highly motivated individual who ha[d] changed his diet radically, started losing weight, [and was] exercising significantly." *Id.* at 290. Another note indicated he had purchased an exercise bike, which was alleviating his knee pain and improving his range of motion and blood sugar levels. Again, Mr. Mendez elected to forgo an MRI of his knees because he was "overall feeling pretty good." *Id.* at 298. This all demonstrates that the ALJ properly evaluated Mr. Mendez's allegations of pain in light of the relevant credibility factors and supported her credibility finding with substantial evidence.

As for Mr. Mendez's obesity, the ALJ recognized that Mr. Mendez was "an obese individual." *Id.* at 23. She determined, however, that his obesity was not a severe impairment because it "did not require treatment or result in vocationally relevant limitations." *Id.*; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c) (requiring that an impairment or combination of impairments significantly limit the claimant's ability to do work activities). Mr. Mendez correctly contends that the ALJ still was required to consider the combined effects of his obesity and other impairments, *see*

- 10 -

*Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), but the ALJ's finding that his obesity posed no vocational limitations obviated the need for further analysis of Mr. Mendez's obesity in assessing his RFC, *see id.* at 1065 n.3 (explaining that an ALJ's finding at step two that an impairment poses no restriction to the claimant's work activities obviates the need for further analysis at step four); *see also Burch v. Barnhart*, 400 F.3d 676, 683-84 (9th Cir. 2005) (holding that obesity without attending functional limitations was adequately considered by ALJ even though it was not expressly incorporated into RFC). Moreover, the ALJ stated that she had "careful[ly] consider[ed] . . . all the evidence," Aplt. App. at 20, recognizing that she was required to consider all impairments, "including impairments that are not severe," *id.* at 21. Given these statements, we have no reason to doubt that the ALJ failed to consider Mr. Mendez's obesity, particularly since she recognized that it decreased in correlation to his increase in exercise. Thus, the ALJ properly evaluated Mr. Mendez's impairments and credibility in assessing his RFC.

### B. Treating Physician's Opinion

We next consider Mr. Mendez's claim that the ALJ erred in discounting the opinion of his treating physician, Dr. Teresa Jarmul. Dr. Jarmul treated Mr. Mendez from April 2008 through his amended onset date, June 19, 2009. On that date, Dr. Jarmul completed a functional capacity questionnaire indicating that she first treated Mr. Mendez on February 6, 2009. On the questionnaire, Dr. Jarmul diagnosed Mr. Mendez with "[g]out, chronic foot pain," and she stated that his

prognosis was "[g]ood but gout is a recurrent problem[.]" Aplt. App. at 267. Dr. Jarmul did not expect his impairment to last at least twelve months, and she wrote, "I have not seen him to know if his [symptoms] are ongoing now. He could have recurrent episodes for years." *Id.* She also believed he could not wear work boots, he could stand and walk for no more than two hours in an eight-hour work day, he could sit no more than four hours, and he frequently experienced "pain severe enough to interfere with attention and concentration needed to perform even simple work tasks." *Id.* The ALJ gave these opinions "little, and certainly not controlling, weight," reasoning that Dr. Jarmul had seen Mr. Mendez on only "isolated incidences" briefly before his amended onset date, her notes conflicted with records from another health care provider, and her opinions were inconsistent with her own prognosis and Mr. Mendez's activities. *Id.* at 25. On appeal, Mr. Mendez insists that the ALJ improperly discounted the doctor's opinion, but we disagree.

"Where, as here, the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must decide whether the opinion should be rejected altogether or assigned some lesser weight." *Newbold*, 718 F.3d at 1265 (internal quotation marks omitted). Even if an opinion is not entitled to controlling weight, the ALJ must still weigh the opinion in light of the factors set forth at 20 C.F.R. §§ 404.1527 and 416.927. *Id.*

The ALJ discounted Dr. Jarmul's opinion in part because her "treatment was limited to a brief period of time prior to the alleged onset date." Aplt. App. at 25.

- 12 -

Although Mr. Mendez points out that this period was ten months, between April 2008 and February 2009, Dr. Jarmul indicated on the questionnaire that she first treated Mr. Mendez in February 2009. Moreover, the ALJ recognized that Dr. Jarmul had not seen Mr. Mendez for four months before completing the questionnaire, which is presumably why the doctor wrote, "I have not seen him to know if his [symptoms] are ongoing now." *Id.* at 267. Thus, the ALJ observed that "Dr. Jarmul, by her own statement, saw [Mr. Mendez] on isolated incidences in early 2009 relative to an acute gout flare." *Id.* at 25. Because the ALJ was obliged to consider both the length and frequency of the treatment relationship, *see* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i), this was an appropriate basis for discounting the doctor's opinion.

The ALJ also discounted Dr. Jarmul's opinion in part because it conflicted with records from Southern Colorado Family Medicine. Mr. Mendez contends that these records are not necessarily conflicting, but he does not elaborate on his argument or provide any record citations to support it. *See* Aplt. Br. at 33. This fails to adequately present the issue. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those . . . contentions that have been adequately briefed for our review."). He similarly argues that Dr. Jarmul's opinion did not significantly differ from the opinion of a consultative examiner, but the ALJ did not discount Dr. Jarmul's opinion on that basis. Rather, the ALJ's other grounds for discounting Dr. Jarmul's opinion were because it was inconsistent with

- 13 -

Mr. Mendez's activities and the doctor's admission that his prognosis was good—rationales that Mr. Mendez does not challenge and we need not consider. *See id.*

## C. *Step Five Determination*

Mr. Mendez also contends that the ALJ erred in concluding at step five that he could transition to other work. He first says that according to the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993) (SCO), two jobs identified by the VE—gate guard and furniture rental clerk—are inconsistent with his RFC. Nothing in the DOT suggests these jobs are inconsistent with his RFC, however, and the record clearly indicates that the ALJ confirmed that the VE's testimony was consistent with the DOT, *see* Aplt. App. at 59; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (requiring ALJ to elicit a reasonable explanation for any conflict between VE's testimony and DOT). Although the SCO describes additional characteristics for occupational groups that encompass these jobs, the ALJ was entitled to rely on the VE's testimony to clarify what the DOT indicated—that those characteristics did not apply in this particular case. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (holding that ALJ can rely on VE's testimony if there is adequate record support for doing so because "all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation").

Finally, Mr. Mendez asserts that the ALJ improperly relied on the VE's testimony that he could perform the sedentary job of a telemarketer. As we understand his argument, the ALJ could not consider sedentary jobs because the medical-vocational guidelines (grids) indicate that a person of Mr. Mendez's age, education, and experience would be disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.06. Mr. Mendez's reliance on the grids is misplaced, however, because the grids should not be used where, as here, the claimant lacks the ability to perform the full range of work in a particular RFC category. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Recognizing that Mr. Mendez lacked this ability, the ALJ correctly consulted the VE to determine the extent to which his limitations eroded his occupational base, and the VE testified that he could still perform the job of a telemarketer. *See* SSR 83-12, 1983 WL 31253, at *2 (1983). There was no error.

### III

The district court's judgment is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge

- 15 -