**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

FEB 13 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| CHRISTY ROSE, | No. 23-35001 |
| Plaintiff-Appellant, | D.C. No. 4:21-cv-05022-ACE |
| v. | |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Alexander C. Ekstrom, Magistrate Judge, Presiding

Submitted February 9, 2024[**]
Portland, Oregon

Before: GOULD, BYBEE, and BRESS, Circuit Judges.

Christy Rose appeals from a federal magistrate judge's decision affirming the

Commissioner of Social Security's denial of her application for Social Security

disability benefits. "We 'review the . . . court's order affirming the ALJ's denial of

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

social security benefits *de novo* and will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence.'" *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The ALJ did not err at step two of the sequential analysis by concluding that Rose's chronic headaches are not a "severe" impairment. A medical impairment can be deemed "severe" when "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (quoting SSR 02-01p, 67 Fed. Reg. 57859 (2002)).

The record demonstrates that Rose's headaches are manageable, her CT scan was "unrevealing," and Rose denied experiencing headaches by March 2020. Substantial evidence supports the ALJ's determination that Rose's headaches were not a severe impairment. Moreover, because "step two was decided in [Rose's] favor" and the ALJ considered all of Rose's medically determinable ailments when assessing residual functional capacity, "[a]ny alleged error [at step two] is therefore harmless and cannot be the basis for a remand." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

2. Nor did the ALJ err in concluding at step three of the analysis that none of Rose's impairments "meets or equals" an impairment listed in the Social Security Administration's regulations. 20 C.F.R. § 416.920(a)(4)(iii). *First*, the ALJ was not required to compare Rose's headaches to Listing 11.02 for "Epilepsy" because Rose failed to "present[] evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. Nor does the record support Rose's step three argument given the above-noted evidence that her headaches are not a severe impairment.

*Second*, substantial evidence supports the ALJ's conclusion that Rose's degenerative disc disease does not meet or equal Listing 1.04 for "Disorders of the Spine." To satisfy that listing, a claimant must show that her spinal disorder "result[s] in compromise of a nerve root . . . or the spinal cord," and produces either "nerve root compression," "spinal arachnoiditis," or "lumbar spinal stenosis." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04 (2020). Where the agency's medical consultant testified that Rose's medical history was not consistent with these criteria and Rose herself seeks a remand to "determine whether [she] suffers nerve root compromise," the ALJ could conclude that the listing was not met. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

3. The ALJ gave "clear and convincing reasons" for discounting Rose's testimony about the severity of her symptoms. *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1160 (9th Cir. 2008)).  The ALJ noted that, in contrast to Rose's testimony that she faced risk of serious harm due to odors such as deodorant or perfume, Rose's physical examinations were all "generally mild" and reflected "stable" pulmonary functioning.  Rose had also told doctors that her symptoms were "under control." "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498 (emphasis in original).  Nor did the ALJ err in considering Rose's activities at home, such as Rose doing "lots of yard work," in concluding that Rose's allegations of more severe incapacitation were incompatible with the record. Although Rose faults the ALJ for not discussing additional aspects of her testimony when making the credibility assessment, an ALJ must only provide enough "reasoning in order for us to meaningfully determine whether . . . [her] conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1103 (9th Cir. 2014).  The ALJ did so here.

4.  The ALJ did not err in assigning little weight to the opinion of Rose's treating physician.  Under the 2017 regulations that govern Rose's claim, "there is not an inherent persuasiveness to evidence from government consultants over a claimant's own medical source(s), and vice versa." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (internal quotation marks, citation, and alterations omitted). Instead, the ALJ was required to evaluate her medical opinion evidence under 20

4

C.F.R. § 404.1520c. *See id.* at 789, 792. Under these rules, "'[t]he most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Id.* at 791 (quoting 20 C.F.R. § 404.1520c(a)). But "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

As the ALJ explained, Rose's treating physician offered "no objective evidence" to support his conclusions that Rose would be off-task for much of the workday and would necessarily miss multiple shifts per month. Indeed, the physician's own treatment notes reflected that Rose's interstitial lung disease was "stable" and manageable on a "conservative course." Nor were the treating physician's assessed limitations "entirely consistent with the longitudinal evidence," given Rose's mild physical findings and her ability to attend doctor's appointments without suffering adverse reactions. Substantial evidence supported the ALJ's conclusion that Rose's treating physician's opinion did not align with the record as a whole.

5. Because the ALJ did not err when assessing Rose's residual functional capacity, the hypothetical she posed to the vocational expert was not incomplete. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

**AFFIRMED.**

5